Nicholson, C. J.,
delivered the following opinion:
Complainants are sureties of David Ery, as tax collector for Greene county. On the 26th of April, 1866, the Legislature passed an act allowing Fry the further time of six months to collect and account for the taxes. The question raised by the bill is, does this extension of time to the tax collector release his sureties ?
As % between individuals, it is well settled that whenever the right of the principal to sue is, for the time, gone, so that if he sued, the principal debtor could set up the contract against him successfully as a defense, then he can equally set up the defense against the surety claiming to be substituted to the creditor’s right. This makes it necessary that it should be a binding and obligatory contract, capable of being enforced. A mere gratuitous indulgence, or promise of indulgence, being nudum pactum, not capable of enforcement, has no such effect; 9 Yerg., 32; 3 Hum., 412. It is insisted that upon these principles the sureties of Fry were not released by the extension of *431 time given to him by the Legislature, because the sureties had the right, notwithstanding the legislative act giving time, to pay the debt and sue the principal debtor. But could the sureties sue the principal successfully? Would not the legislative act of indulgence preclude the sureties from collecting the debt from the principal debtor? This must depend upon the legal effect of the legislative act. If it has the force and effect to protect the principal debtor against suit by the State, then of course it would protect the principal debtor from suit by his sureties. The Attorney-General says that "a private act to give indulgence to a State debtor is not in the nature of a partial law, but a mere business direction. Legislation of a general character, for the government of the people, is essentially different from laws to administer the revenue. The one must needs be general for the protection of the people; the other must needs be applied to the particular case, and be, in many instances, restricted to one case, one payment, <&c.” And further: “ Then a particular law giving indulgence must be construed as a law touching the officers of the State — those whom she has a right to control by partial laws — not to a particular man or men, whom she has no right to direct, except by general laws.” In another part of his argument the Attorney-General, after stating that the State is not bound by a voluntary direction given to its officers, says: "It is only directory to the officers of the State. They are precluded from suit; the surety is not.” We understand from all this that the Attor *432 ney-General concedes that the act giving time to Fry may be valid as a business direction; that it operates upon the officers of the State whose business it is to collect the revenue; that these officers are precluded from suing by the act giving indulgence. But he insists that the State itself is not bound not to sue, and hence there was no suspensión of her right. It results, if this argument is sound, that the Legislature precluded the Comptroller and Attorney-General from suing Fry during the time of indulgence given, but yet his sureties were not thereby prevented from sueing him, or compelling the State to sue him, notwithstanding the act giving time. It is scarcely necessary for us to say, that the sureties could not prosecute a suit against the State to compel her to sue the principal debtor. This would be a violation of the familiar principle, that the sovereign can only be sued with his consent. Then, could the sureties pay the debt and sue the principal debtor? The Legislature had protected the principal debtor from ' suit, by forbidding the Comptroller and Attorney-General and Circuit Judge to enforce collection by suit. It is conceded by the Attorney-General that this pfohibition is binding on the officers of the State. The State operates alone through its officers. If their hands are tied by a valid legislative act, we are unable to understand how the sureties are to proceed to sue, and collect by suit from their principal debtor, a debt which the State has forbidden her own officers to collect from him by suit. We understand that on the subject of revenue the sovereignty of the State is *433 represented by tbe Legislature, and a legislative act is passed wbieh forbids the officers of the State to sue the debtor of the State. This operates necessarily to protect the debtor from suit, as well by the sureties as by the officers ■ of the State. It is true the State, through the Legislature, may repeal the act of indulgence, but until such repeal it is binding, and the State is incapable of enforcing the debt, except through the repeal of the act by the Legislature. Until such repeal, the suspension of the right to sue is complete, and the sureties can have no remedy, either against the State or the principal debtor.
It follows that the legislative indulgence given to Ery, as it was not repealed, operated to discharge his sureties. It follows that the Chancellor’s decree overruling the demurrer was correct, and is affirmed with costs. The cause will be remanded.
Deaderick, Freeman, Sneed, and Turney concurred.